

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
STEVEN COREN

                            Petitioner,

    -against-

UNITED STATES OF AMERICA,
                           Respondent.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

13-CV-5196 (ENV)

VITALIANO, D.J.

Steven Coren is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, challenging his convictions on charges, principally, of mail fraud, see 18 U.S.C. §1341, and wire fraud, see 18 U.S.C. § 1343. In the alternative, Coren moves for further discovery and an evidentiary hearing. For the reasons stated below, the writ is denied, as is his request for further discovery and a hearing, and his petition is dismissed.

## Background

On March 20, 2009, Coren pled guilty to a sixteen-count indictment on a variety of charges, which stem from petitioner's fraudulent activity while he was a practicing attorney specializing in wage and labor law compliance.

1

Gov. Mem. in Opposition, *Coren v. United States*, CV 13-5196 (ENV) (Dec 6, 2013) at 12 ("Gov. Mem.") at 2. Specifically, petitioner created schemes for several of his contractor clients to defraud their governmental contracting customers by creating the false appearance that they paid their laborers at the required prevailing wage rate. *Id.* at 3. The workers themselves, obviously, were also victimized by the schemes.

To perpetrate the fraud, petitioner offered his client contractors membership in the Contractor's Benefit Trust (the "CBT"), a trust the petitioner created and for which he was the trustee. *Id.* The CBT's supposed purpose was to provide benefits to workers employed by his clients on prevailing wage work. The CBT was organized pursuant to § 220 of the Davis-Bacon Act, 40 U.S.C. § 3142, which requires the payment of prevailing wage rates, as well as verification of their payment. *Id.* However, on petitioner's advice, the vast majority of the funds deposited into the CBT were, instead, used to pay company employees, including the owners themselves, who did not perform laborer's work. *Id.* at 5. The funds diverted to these employees and owners were falsely represented to the various governmental contracting entities as funds used to provide benefits to the prevailing wage laborers who actually did the government work. *Id.* As a result, under this scheme, the wage

workers employed on government projects received less than the prevailing wage, and the governmental contracting entities were deprived of the talents of higher wage earning laborers that Coren's clients falsely reported they were receiving. *Id.* at 3.

Petitioner, by his own admission and as established by audio tapes played in open court at the aborted trial, was actively involved in the scheme. *See id.* at 3-10. In addition to creating the CBT and serving as its trustee, Coren advised his clients on how to successfully mask its true distributions. *See id.* at 4-5. At petitioner's direction, the object of the fraud was accomplished by strategically removing funds from the trust and transferring them to the construction officers' "own pockets." *See id.* at 5-6. For instance, Coren instructed one client to purchase and cash out a life insurance policy as a means to conceal that he was benefitting from the CBT fund. *Id.* at 6. He also recommended that a "Vacation Trust" be established to fund, using money from the CBT, vacations and bonuses for "qualifying employees," which, in practice, was essentially limited to petitioner's clients. *Id.* at 5. This was done with the purpose of misleading the governmental contracting entities into believing that the prevailing wage earner workers had received the CBT funds in satisfaction of state and federal Davis-Bacon obligations. *Id.*

3

Coren's tactics, as he told two clients, created the illusion of legitimacy; as he put it, "[y]ou can do anything you want as long as it smells right." *Id.* In addition to establishing the trust, and advising his clients how to draw money for themselves from it, Coren also hoped that, with clients fattened by fraud, the scheme would enrich himself as well. *Id.* at 4.

From the start of the prosecution, Coren has labored under the delusion that the loophole scheme he created may have fractured the spirit of Davis-Bacon but somehow was not fraudulent. His motion to dismiss the indictment on substantive law grounds and concepts of lenity was denied. *United States v. Coren*, No. 07-cr-265, 2008 WL 4488995 (E.D.N.Y. Aug. 29, 2008). Eventually, on March 20, 2009, in mid-trial, he gave up the ghost and pleaded guilty to the indictment.

As to the mail and wire fraud counts at issue on his petition, Coren, at the time of his plea, allocuted that he "did knowingly and intentionally devise a scheme and artifice to defraud [a state or federal agency], and to obtain money and property from [the contracting agency] by means of materially false and fraudulent pretenses, representations and promises." *Id.* at 13. The "money and property" that the victims were defrauded of was described in the indictment in the following way:

4

> Between May 2000 and December 2000, on the advice and counsel, and with the assistance, of [petitioner Steven Coren], CW-1 and CW-2 falsely represented to the NYCHA that Corporation-1 and Corporation-2 paid a total of approximately $227,756.42 in fringe benefit contributions on behalf of Corporation-1 and Corporation-2's prevailing wage workers. As a result, approximately $1,851,562.95 in government funds were fraudulently obtained by Corporation-1 and Corporation-2.

*Id.* at 14. At the time of his plea, Coren acknowledged he was pleading guilty voluntarily and understood the charges against him. *Id.* at 15. Nonetheless, on July 13, 2008, he filed a motion to withdraw his guilty plea, alleging that it was not knowing and voluntary as he did not understand the mail fraud statute's "money and property" requirement. *Id.* at 17. But the motion was denied, with the Court finding that the record sufficiently indicated that Coren, at the time of his plea, understood the nature and elements of the charges against him. *Id.* at 18. He was thereafter sentenced to 30 months' imprisonment, three years of supervised release, a $1,600 special assessment, and restitution of $673,042.03. *Id.*

Coren appealed his conviction and sentence, moved twice for bail pending writ of certiorari, and filed a petition for a writ of certiorari. *Id.* at

18-19. All have been denied.[1] *Id.* On September 16, 2013, Coren filed this § 2255 petition.

## Standard of Review

A person who has been convicted and is currently a federal prisoner may petition the sentencing court to correct, vacate, or set aside the sentence under 28 U.S.C. § 2255.[2] The grounds for relief are very limited. A § 2255 court may only grant relief if it concludes: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' [or] (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468 (1962). Since petitioner is acting *pro se*, his pleadings will be construed liberally to raise the strongest arguments they suggest. *See*

---

[1] Petitioner lost his direct appeal on October 18, 2011. *United States v. Coren*, 432 Fed. App'x 38 (2d Cir. 2011). His motion to stay remand pending further appeal was denied on October 21, 2011, and his motion to adjourn his surrender date was denied on January 5, 2012. He surrendered to the Bureau of Prisons on January 9, 2012. The Supreme Court denied his writ of certiorari on April 2, 2012. *United States v. Coren*, 132 S.Ct. 1858 (2012).

[2] The fact that Coren is no longer imprisoned does not oust this Court of jurisdiction. His liberty remains constrained by the three-year period of supervised release that follows prison. That restriction preserves the Court's jurisdiction to entertain this § 2255 petition. *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994).

*Bertin v. U.S.*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).[3]

## Discussion

Pursuant to 28 U.S.C. § 2255, a habeas petition must be brought within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review or;

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the relevant benchmark is the date on which the judgment of conviction became final. "Final," in this context, refers to the Supreme

---

[3] Given the Court's disposition of this petition, whether or not the Court entertains Coren's petition with solicitude is immaterial. Though the Court grants solicitude, it does not decide whether Coren, as a trained attorney, is entitled to solicitude as of right.

Court's denial of a petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527 (2003).

On application of blackletter law, the petition's file date is beyond the time allotted by § 2255. Coren's petition for a writ of certiorari was denied by the Supreme Court on April 2, 2012. The one-year limitations period expired on April 2, 2013. Gov. Mem. at 20. Coren sought habeas relief in September 2013. *Id.*

To escape the limitations bar, Coren contends that this case belongs in § 2255's third category, claiming that the recent Supreme Court decision, *Sekhar v. United States*, 133 S. Ct. 2720, 2725 (2013), offers him a basis for relief. In *Sekhar*, the defendant attempted to coerce another into recommending that his employer enter into a non-binding commitment to invest in his own company. *Id.* at 2722. The Supreme Court held that such conduct did not constitute "obtaining property," as the recommendation was not a transferable object of value.

*Sekhar* has little relevance to the case at hand. *See id.* at 2729 ("I do not suggest that the concepts of property under the mail fraud statute and the Hobbs Act are necessarily the same.") (Alito, J. concurring in judgment). Other courts have reached similar conclusions. *See .e.g., United States v. Clark*,

593 Fed. App'x 53, 54 n.1 (2d Cir. 2014) (upholding a wire fraud conviction and classifying petitioner's reliance on *Sekhar* as "misplaced" since, there, the Court "analyzed the scope of the concept of 'property' for purposes of the Hobbs Act, not the wire fraud statute."); *United States v. Huff*, No. S2 12- CR-750 (NRB), 2015 WL 463770, at *4 (S.D.N.Y. Feb. 4, 2015) (rejecting petitioner's argument that *Sekhar*'s property definition is appropriately extended to the federal wire fraud statute (18 U.S.C. § 1343), noting that, in *Sekhar*, the word's interpretation "turned specifically on the text of the Hobbs Act, which requires the 'obtaining of property from another'—a key phrase, with a logical connection to a concern for transferability, that is notably absent from the wire fraud statute."); *United States v. Finazzo*, No. 10-CR-457 (RRM) (RML), 2014 WL 3818628, at *34 (E.D.N.Y. Aug. 1, 2014) (declining to apply the *Sekhar* property definition to property as used in fraud statutes, including the federal mail (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) statutes). Further, when confronted with both Hobbs Act and mail and wire fraud violations, this Court (per Brodie, J.) has only analyzed the "transferable" nature of property in relation to the Hobbs Act. *See Spiteri v. Russo*, No. 12-CV-2780 (MKB) (RLM), 2013 WL 4806960, at *47 - 50 (E.D.N.Y. Sept. 7, 2013).

The short of it is that petitioner's contention that mail and wire fraud violations must be re-examined in light of the *Sekhar* holding is without merit. *Sekhar* is simply inapposite to criminal conduct founded on fraud. It provides neither a category-three basis to enlarge Coren's limitations period nor a substantive foundation of relief from the convictions he seeks to use that enlarged time to challenge. The petition is time barred and is dismissed on that ground.[4]

## Conclusion

For the foregoing reasons, Coren's application for a writ of habeas corpus is denied, as is his request for further discovery and an evidentiary hearing, and his petition his dismissed.

The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and to close the case.

So Ordered.

Dated: Brooklyn, New York
July 31, 2015

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge

---

[4] The alternative relief sought is similarly without merit and is also denied.